MEG:NJM/ADG
F. #2018R02270

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

EZHIL SEZHIAN KAMALDOSS,
    also known as "Kamaldoss Sezhian,"
    "Kamal Doss" and "Ezhil Cezhian,"
HARPREET SINGH,
    also known as "Vicky Singh,"
PARTHIBIAN NARAYANASAMY,
    also known as "Pat,"
VELAUDAPILLAI NAVARATNARAJAH,
    also known as "Rajah," "Rajah Rani"
    and "Valaudapillai Navaratnarajah,"
BALJEET SINGH,
    also known as "Sunny,"
DEEPAK MANCHANDA,
GULAB GULAB,
MUKUL CHUGH,
VIKAS M. VERMA and
KAMALADOSS VETRI SELVAM,
    also known as "Vetri Selvam" and
    "Kamala Doss Selvam,"

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**FILED UNDER SEAL**

COMPLAINT AND
AFFIDAVIT IN SUPPORT
OF APPLICATION FOR
ARREST WARRANTS

(T. 18, U.S.C., § 1956(h); T. 21, U.S.C.,
§ 846)

Case No. 19-MJ-793

EASTERN DISTRICT OF NEW YORK, SS:

           PATRICK CONNOR, being duly sworn, deposes and states that he is a

Special Agent with the United States Food and Drug Administration ("FDA"), duly

appointed according to law and acting as such.

In or about and between April 2018 and August 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants EZHIL SEZHIAN KAMALDOSS, also known as "Kamaldoss Sezhian," "Kamal Doss" and "Ezhil Cezhian;" HARPREET SINGH, also known as "Vicky Singh"; PARTHIBIAN NARAYANASAMY, also known as "Pat"; VELAUDAPILLAI NAVARATNARAJAH, also known as "Rajah," "Rajah Rani" and "Valaudapillai Navaratnarajah"; BALJEET SINGH, also known as "Sunny"; DEEPAK MANCHANDA; GULAB GULAB; MUKUL CHUGH; VIKAS M. VERMA; and KAMALADOSS VETRI SELVAM, also known as "Vetri Selvam" and "Kamala Doss Selvam," together with others, did knowingly and intentionally conspire to possess with intent to distribute a controlled substance, which offense involved a substance containing tramadol, a Schedule IV controlled substance, contrary to Title 21, United States Code, Section 841(a)(1).

(Title 21, United States Code, Section 846)

In or about and between April 2018 and August 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants EZHIL SEZHIAN KAMALDOSS, also known as "Ezhil Kamaldoss," "Kamal Doss" and "Ezhil Cezhian," and KAMALADOSS VETRI SELVAM, also known as "Vetri Selvam" and "Kamala Doss Selvam," together with others, did knowingly and intentionally conspire to (a) conduct financial transactions in and affecting interstate and foreign commerce, to wit: the transfer of funds between India and the United States through the use of foreign and United States financial institutions, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity and which transactions in fact involved the proceeds of specified unlawful activity, to wit: conspiracies

to import and to possess with intent to distribute and distribute controlled substances, in

violation of Title 21, United States Codes, Sections 963 and 846, respectively, with the intent

to promote the carrying on of specified unlawful activity, contrary to Title 18, United States

Code, Section 1956(a)(1)(A)(i), and (b) transport, transmit, and transfer funds to a place in

the United States, from and through a place outside the United States, to wit: from financial

institutions in India to one or more bank accounts in the United States, with the intent to

promote the carrying on of specified unlawful activity, to wit: conspiracies to import and to

possess with intent to distribute and distribute controlled substances, in violation of Title 21,

United States Codes, Sections 963 and 846, respectively, contrary to Title 18, United States

Code, Section 1956(a)(2)(A).

> (Title 18, United States Code, Section 1956(h))

The source of your deponent's information and the grounds for his belief are

as follows:[1]

## BACKGROUND OF THE AFFIANT AND THE INVESTIGATION

1.     I am a Special Agent with the United States Food and Drug

Administration's Office of Criminal Investigations ("FDA-OCI") and have been so since

March 2014.   Previously, I was a Special Agent with the United States Army Criminal

Investigation Command for 18 years, where I investigated economic and drug offenses,

among others.   As a Special Agent, I am responsible for investigating violations of the

Federal Food, Drug and Cosmetic Act ("FDCA"), and related Title 18 and Title 21 offenses.

---

[1]       Because the purpose of this Complaint is to set forth only those facts necessary
to establish probable cause to arrest, I have not described all the relevant facts and
circumstances of which I am aware.

I am familiar with the facts and circumstances set forth below from my participation in the investigation, my review of U.S. government databases and records, including records of the U.S. Department of State and of U.S. Customs and Border Protection ("CBP"); and from reports of other law enforcement officers and agents involved in the investigation.

2.      Since at least January 2018, law enforcement agents with the Drug Enforcement Administration, the Federal Bureau of Investigation, FDA-OCI, CBP, Homeland Security Investigations ("HSI"), the United States Postal Inspection Service and other agencies (the "investigative agencies") have been investigating the large-scale importation of misbranded, Schedule IV controlled substances into the United States from India.   As part of the scheme, distributors in India shipped misbranded Tramadol, Carisoprodol, Alprazolam and other Scheduled drugs to individuals and entities in the United Sates through the United States Postal Service ("USPS") and other couriers, after which the individuals and entities in the United States have broken down the products, repackaged them and mailed them to customers in the United States using the USPS.

3.      The investigation has revealed that the coconspirators operate using a "co-op model," in which different fictitious business entities associated with different groups of coconspirators work together, in different but overlapping capacities, to facilitate the overall drug distribution scheme.   Coconspirators play different roles, with some facilitating the importation of controlled substances from India, some managing the logistics involved in developing and verifying customer lists based on orders placed with third-party entities, some coordinating the purchase or sale of the controlled substances, and some manually moving, repackaging, and mailing controlled substances.   The use of a co-op model in a large-scale controlled substance importation and distribution conspiracy is common,

although the specific allocation of responsibilities between coconspirators varies on a case-by-case basis.

      4.     None of the individuals or entities described in this affidavit may legally distribute Tramadol in the United States.  The FDCA prohibits the distribution or receipt in interstate commerce of any misbranded drug.  21 U.S.C. § 331(c).  A drug is deemed to be "misbranded" unless its labeling bears adequate directions for use.  21 U.S.C. § 352(f)(1).  Under regulations promulgated by the FDA, "adequate directions for use" is defined as directions under which a layman can safely use a drug for its intended uses.  21 C.F.R. § 201.5.  Prescription drugs by their very nature are safe for use only under the supervision of a licensed practitioner.  21 U.S.C. § 353(b)(l)(A).  Adequate directions for use, therefore, cannot be written for prescription drugs, and they are presumptively misbranded (and illegal to distribute) under the FDCA.  21 U.S.C. § 353(b).[2]

---

   [2] To allow for the lawful movement of prescription drugs in interstate commerce, FDA regulations exempt prescription drugs from the adequate-directions-for-use requirement if they meet all the conditions listed in the regulation.  21 C.F.R. § 201.100.  These conditions include, among other things, that:

      a.     the drug is in the possession of a person (or his agents or employees) regularly and lawfully engaged in the manufacture, transportation, storage or wholesale distribution of prescription drugs; or in the possession of a retail, hospital or clinic pharmacy, or a public health agency regularly and lawfully engaged in dispensing prescription drugs; or in the possession of a practitioner licensed by law to administer or prescribe such drugs; and it is to be dispensed in accordance with 21 U.S.C. § 353 of the FDCA;

      b.     the label of the drug bears the statement "Rx only";

      c.     the labeling on or within the package from which the drug is to be dispensed bears adequate information for its use, including indications, effects, routes, methods and frequency and duration of administration, and any relevant hazards, contraindications, side effects and precautions under which practitioners licensed by law to administer the drug can use the drug or device safely and for the purposes for which it is

5.      During the course of the investigation, on or about March 21, 2018, an undercover agent with one of the investigative agencies (the "UC") received an unsolicited text message from an individual who identified himself as "James," and later "James Wills," from an online pharmacy and offered to sell Tramadol Hydrochloride 100mg pills.  The UC replied to several text messages and ascertained that the sender was willing to sell thousands of pills of Tramadol and Carisoprodol in bulk shipments.

6.      Between approximately March 2018 and July 2018, law enforcement agents conducted a series of controlled buys of Scheduled drugs from Wills.  For example, on or about March 21, 2018, Wills agreed to sell the UC 500 pills of Tramadol 100mg and 100 pills of Xanax 1mg.  Wills instructed the UC to make payments via PayPal and MoneyGram, which law enforcement agents did.

7.      On or about April 9, 2018, Wills provided the UC the following USPS tracking numbers for packages containing the drugs:

a.      USPS tracking number 9505 5105 9222 8096 4520 81:

Tramadol 540 pills.

---

intended, including all purposes for which it is advertised or represented, 21 C.F.R. § 201.100(c)(1); and

d.      if the drug is subject to the new drug approval statute, the labeling bearing such information is the labeling authorized by the new drug application.

A prescription drug is misbranded if at any time prior to dispensing the label of the drug, it fails to bear, at a minimum, the symbol "Rx only."  21 U.S.C. §353(b)(4)(A).  A drug is also misbranded under the FDCA if it is manufactured, prepared, propagated, compounded or processed in an establishment not duly registered with FDA, or it was not on a list as required by 21 U.S.C. § 360(j).  21 U.S.C. § 352(o).

b.     USPS tracking number 9505 5134 1859 8096 1446 76: Xanax 1mg 90 pills.

8.     On or about April 16, 2018, law enforcement agents took custody of a USPS Priority Mail envelope with tracking number 9505 5105 9222 8096 4520 81.  The envelope contained 54 blister packs each marked with Tramadol Hydrochloride OL-TRAM TABLETS 100mg.[3]  Each blister pack contained 10 pills for a total of 540 pills.  The shipping label on the envelope was addressed to the name and address the UC had provided and bore the return address "TCL, 24942 Budde Road, Spring, TX 77388."

9.     On or about April 16, 2018, law enforcement agents took custody of a USPS Priority Mail envelope with shipping label 9505 5134 1859 8096 1446 76.  The envelope contained nine blister packs each marked with Alprazolam SR Tablets Zocalm SR-1.[4]  Each of the blister packs contained 10 pills for a total of 90 pills.  The label was addressed to the name and address that the UC had provided, and the label bore the return address "Andrew Fistel,[5] 187-05 Union Turnpike, Fresh Meadows, New York, NY-11366."  The return address was stamped onto the envelope in blue ink and used all capital letters.

---

[3] "Ol-Tram" is a brand name for Tramadol Hydrochloride produced in India.  A sample of the Ol-Tram pills was subsequently tested and found to contain Tramadol Hydrochloride.  As noted above, Tramadol is a Schedule IV synthetic opioid.

[4] "Zocalm" is a brand name for Alprazolam.  A sample of the Zocalm pills were subsequently tested and contained Alprazolam, Metoprolol and Citalopram.  Citalopram and Metoprolol are prescription medications.  Citalopram and Metoprolol were not listed on the drugs' packaging.

[5] Law enforcement agents have not identified an individual named "Andrew Fistel" as a coconspirator in this case.

10.     The UC conducted additional purchases of Tramadol, and on numerous packages that the investigating agencies received as a result of those buys, the word "Avenue" was misspelled on the return address labels in an identical fashion, missing the letter "v."

### DISTRIBUTION OF TRAMADOL FROM THE QUEENS WAREHOUSE

11.     Law enforcement agents identified a warehouse located in Queens, New York, which they believed to be the source of packages associated with the misspelled return address (the "Warehouse").

12.     In or about July 2018, law enforcement agents conducting surveillance of the Warehouse saw the defendants VELAUDAPILLAI NAVARATNARAJAH, also known as "Rajah," "Rajah Rani" and "Valaudapillai Navaratnarajah" ("NAVARATNARAJAH") and EZHIL SEZHIAN KAMALDOSS, also known as "Ezhil Kamaldoss," "Kamal Doss" and "Ezhil Cezhian" ("KAMALDOSS") on the loading ramp with other individuals bringing packing supplies into the building.   Later that day, KAMALDOSS was observed carrying USPS Priority Mail flat rate envelopes and bags out of the back of the Warehouse, into the loading dock; KAMALDOSS then loaded the envelopes and bags into a car, entered the car and drove away.

13.     In or about and between August 2018 and August 2019, law enforcement agents conducted physical and electronic surveillance of the Warehouse multiple times per week, including through the use of a pole camera outside of the Warehouse.   This surveillance has shown a pattern of drug shipment activity at the Warehouse conducted, at various times, by the defendants KAMALDOSS; HARPREET SINGH, also known as "Vicky Singh" ("HARPEET"); PARTHIBIAN NARAYANASAMY,

also known as "Pat" ("NARAYANASAMY"); NAVARATNARAJAH, BALJEET SINGH, also known as "Sunny" ("BALJEET"); DEEPAK MANCHANDA ("MANCHANDA"); GULAB GULAB ("GULAB"); MUKUL CHUGH ("CHUGH"); and VIKAS M. VERMA ("VERMA"). The only defendant law enforcement agents have not regularly observed moving or supervising the movement of boxes that contain, or are believed to contain, drugs into the Warehouse's loading dock or from the loading dock to vehicles, including USPS vehicles that drive to the Warehouse for pickup, is KAMALADOSS VETRI SELVAM, also known as "Vetri Selvam" and "Kamala Doss Selvam" ("SELVAM").

14.     For example, on or about August 8, 2018, law enforcement agents observed the defendants KAMALDOSS and BALJEET arrive at the Warehouse and enter with several empty red and black bags. They left the Warehouse with three full large bags, two red and one black. They loaded the bags into a Gold Nissan Quest and left the area. A search of New York State vehicle registration records showed that the Gold Nissan Quest was registered to "V. Navarathnarajah," whom I believe to be the defendant NAVARATNARAJAH.

15.     On or about August 9, 2018, law enforcement agents observed the defendant KAMALDOSS leave the Warehouse with full bags and place the bags into a vehicle, which law enforcement agents followed to a post office located in Fresh Meadows, New York (the "Fresh Meadows Post Office"). KAMALDOSS exited the vehicle and entered the Fresh Meadows Post Office, where he left the packages behind. Law enforcement agents coordinated with a postal inspector, who inspected the packages left by KAMALDOSS at the Fresh Meadows Post Office. KAMALDOSS sent approximately 100 packages. Most of the envelopes were pre-labeled Priority Mail envelopes. The pre-

labeled envelopes all bore the same return address as the packages previously received by the UC, including the misspelling of the word "avenue" with the letter "v."

16.     On or about August 29, 2018, law enforcement agents saw the defendants KAMALDOSS and BALJEET leave the Warehouse with two full mail bags, one red and one black, and load both bags into a vehicle.   Agents saw the defendants' vehicle drive to the Fresh Meadows Post Office, where KAMALDOSS exited the vehicle with the red mail bag and entered the post office.   KAMALDOSS mailed 88 Priority Mail flat rate envelopes to different addresses in the United States.

17.     Pursuant to a search warrant authorized by the Honorable Vera M. Scanlon, law enforcement agents searched five of the packages mailed by the defendant KAMALDOSS.   Four of the five parcels each contained 180 pills marked with "Tramadol Hydrochloride," bearing the brand name "Supertram 100."   There were a total of 720 Tramadol pills.   The fifth parcel contained 90 pills marked with "ALPZ-1 Alprazolam tablets manufactured by Neuro Vision."   The FDA Laboratory has confirmed that the Tramadol pills contained Tramadol and the Alprazolam pills contained Alprazolam.

18.     After the search of the five packages that the defendant KAMALDOSS mailed, law enforcement agents continued to monitor the activities at the Warehouse, which appeared to continue unabated.

19.     On or about January 8, 2019, law enforcement agents saw the defendants NAVARATNARAJAH and VERMA leave the Warehouse with several mail bags and then depart in a car.   Thereafter, NAVARATNARAJAH and VERMA arrived at the Fresh Meadows Post Office and entered the post office with a large red mail bag.   A law enforcement agent entered the Fresh Meadows Post Office and saw VERMA mailing a large

number of Priority Mail envelopes. Subsequently, NAVARATNARAJAH came into the Post Office, picked an empty mail bag off of the floor and exited the Post Office. VERMA paid for the transactions and then left the Post Office. After VERMA and NAVARATNARAJAH spoke outside the Post Office, VERMA reentered the facility with another mail bag while NAVARATNARAJAH stayed in the car. In total, that day VERMA and NAVARATNARAJAH shipped 133 Priority Mail envelopes.

20.     Pursuant to a search warrant authorized by the Honorable Lois Bloom, United States Magistrate Judge, law enforcement agents searched four parcels mailed by the defendants NAVARATNARAJAH and VERMA. Three of the four parcels searched contained between 120 and 180 pills marked as "Tramadol," for a total of 480 Tramadol pills. The fourth parcel contained 100 pills marked "Sildenafil."[6] The FDA Laboratory has confirmed that the Tramadol pills contained Tramadol and the Sildenafil pills contained Sildenafil.

21.     Continued surveillance by law enforcement agents determined that workers at the Warehouse left the Warehouse daily Monday through Saturday with full bags similar to the one used by the defendant KAMALDOSS at the Fresh Meadows Post Office. They loaded the bags into multiple vehicles and left the area. Surveillance showed that the defendant BALJEET used a white 2007 Dodge Sprinter to transport parcels from the Warehouse. New York State records showed that the white 2007 Dodge Sprinter was registered to the defendant HARPREET. Law enforcement agents also observed workers at

---

[6] Based on my training and experience, I know Sildenafil to be an unscheduled prescription drug analogous to Viagra, the distribution of which, without a prescription or licensing in the United States, is a crime.

the Warehouse loading similar parcels into a white 2006 Dodge Sprinter registered to "P.
Narayanasamy," whom I believe to be the defendant NARAYANASAMY.

22.     During the course of surveillance, the white 2007 Dodge Sprinter and
white 2006 Dodge Sprinter have made numerous trips from John F. Kennedy International
Airport ("JFK") to the Warehouse; when they arrive at the Warehouse, packages believed to
contain Tramadol are unloaded from the vehicles.   Each business day, bags consistent with
those containing Priority Mail envelopes are then either loaded into vehicles, provided
directly to USPS personnel who drive to the Warehouse, or both.

23.     In or about and between January 2019 and August 2019, law
enforcement agents have been using data obtained from GPS tracking devices to monitor the
movement of vehicles that are typically driven to the Warehouse during the day pursuant to
search warrants authorized by the Honorable Peggy Kuo, Steven M. Gold, Cheryl L. Pollak,
and Sanket J. Bulsara, United States Magistrate Judges.

24.     Based on surveillance of the Warehouse and the tracking of the
vehicles, during the time of the conspiracy, on a near-daily basis a rotating crew of people at
the Warehouse, regularly including the defendants KAMALDOSS, NARAYANASAMY,
NAVARATNARAJAH, BALJEET, MANCHANDA, GULAB, CHUGH, and VERMA, load
USPS Priority Mail flat rate envelopes, brown wrapped parcels and other mail into one or
more vehicles which are then driven to the Fresh Meadows Post Office or provided at the
Warehouse to USPS personnel.   The defendant HARPREET does not physically carry bags
or parcels as regularly as the other coconspirators, but is typically overseeing or watching as
other coconspirators move bags and parcels, including into HARPREET's vehicle, and as

envelopes and parcels are provided to the USPS.[7]   Based on information obtained during the

investigation to date, including but not limited to observations during surveillance and the

judicially-authorized search of USPS parcels mailed by the defendant, I believe that all or

substantially all of the envelopes mailed by the defendants from the Warehouse through the

USPS contain controlled substances.[8]

25.   Two postal employees assigned to the Fresh Meadows Post Office

informed me that the defendant KAMALDOSS came to the post office almost daily and

normally would mail hundreds of USPS Priority Mail flat rate envelopes to various addresses

all over the United States.   KAMALDOSS always paid in cash and was reluctant to set up

an online account or use a credit card.

WHITE BAGS AT THE WAREHOUSE

26.   In or about and between May and August 2019, video surveillance

showed workers at the Warehouse, including the defendants NAVARATNARAJAH,

BALJEET, MANCHANDA, GULAB and CHUGH, involved in using multiple vehicles to

drop off large white bags at the Warehouse and later load the white bags into USPS trucks.

---

[7] Based on a review of emails obtained pursuant to a search warrant authorized by the Honorable Ramon E. Reyes, Jr., as described further in paragraphs 42-43 and 45-46 infra, it appears that HARPREET supplied the coconspirators, including KAMALDOSS, with controlled substances, including Tramadol, for which he sent KAMALDOSS periodic invoices.

[8] The defendants also send some materials out of the Warehouse using UPS and Federal Express (and possibly other carriers).   It is not alleged at this time that these shipments contained controlled substances.   Similarly, on at least one occasion the defendants mailed a box not consistent in appearance with the regularly mailed envelopes through the USPS; it is not alleged that this box contained controlled substances.

27.     On or about July 31, 2019, law enforcement agents saw the defendant BALJEET bring two white bags into the Warehouse and later load the white bags onto a postal truck at the Warehouse.   A law enforcement agent met the postal truck at a U.S. Post Office.   Inside the white bags were more than 300 brown USPS First Class Mail padded envelopes ("brown padded envelopes") with recipient information for individuals and addresses across the United States.   The agent detained five brown padded envelopes, which were searched and revealed approximately 720 pills marked as Tramadol and approximately 90 pills marked as Alprazolam.   The FDA Laboratory has confirmed that the Tramadol pills contained Tramadol and the Alprazolam pills contained Alprazolam.

28.     Ongoing surveillance at the warehouse has confirmed that the coconspirators still actively unload and load mail packages, as they have been doing for months.   Notably, on or about August 9, 2019, the defendant MANCHANDA removed seven large bags from the Warehouse and placed them in the loading dock.   Approximately 30 minutes later, MANCHANDA provided the bags to the USPS mail carrier.   The packages that MANCHANDA mailed were brown padded envelopes consistent with the packages that were mailed on July 31, 2019, which contained Tramadol and Alprazolam. According to USPS personnel, these packages were consistent with the materials that were in the bags that the people at the Warehouse—identified by law enforcement as the defendants MANCHANDA, GULAB, BALJEET and CHUGH—provided on a near-daily basis.

29.     On or about August 10, 2019, law enforcement agents saw the defendants MANCHANDA and BALJEET removing packages from the back of MANCHANDA's vehicle and placing them in the Warehouse's loading dock, and later providing them to a USPS mail carrier who arrived to pick up packages for delivery.

30.     On or about August 14, 2019, law enforcement agents saw the defendant GULAB unloading packages at the Warehouse and providing packages to the USPS mail carrier who arrived to pick up packages for delivery.

31.     On or about August 30, 2019, law enforcement agents saw the defendant CHUGH at the Warehouse, unloading boxes onto the Warehouse's loading dock and then providing packages to the USPS carrier who arrived to pick up packages for delivery.

32.     On most work days while the defendants are present in the United States, law enforcement agents have observed the defendants KAMALDOSS, HARPREET, NARAYANASAMY, NAVARATNARAJAH, BALJEET, MANCHANDA, GULAB and CHUGH at the Warehouse and have also seen VERMA at the Warehouse, although not since approximately March 2019.   As noted supra in paragraph 24, HARPREET—whom I understand, based on the investigation to date, to have a supervisory role in the conspiracy— does not physically carry bags or parcels as regularly as the other coconspirators, although his vehicle has been used to bring materials to the USPS.   The other coconspirators named in this paragraph regularly load and unload materials at the Warehouse, ready materials— including bags containing envelopes—to be picked up by and delivered to USPS, and provide materials to the USPS for delivery.

## IDENTIFICATION OF THE DEFENDANTS

33.     I have personally observed each of the defendants at the Warehouse other than the defendant SELVAM, whom I have personally observed at a house which, according to records from a mortgage company and a law enforcement database, is owned by "Kamaladoss Vetri Selvam" and another person.

34.     I have compared my personal observations and images from pole camera surveillance with drivers' license records obtained from New York State and visa application records obtained from HSI.   Based on those comparisons, I have been able to confirm the identities of each of the defendants.

35.     The defendants KAMALDOSS and HARPREET additionally provided their names to law enforcement officers during secondary inspections upon entering the United States, and the defendant GULAB provided his name and showed his driver's license to law enforcement officers while GULAB was driving to the Warehouse in a Dodge Sprinter van previously identified at the Warehouse.

36.     I have regularly observed several defendants driving vehicles registered in their own names.

a.     I have regularly observed NARAYANASAMY driving a white 2006 Dodge Sprinter registered to "P. Narayanasamy."

b.     I have also regularly observed NAVARATNARAJAH driving a gray 2016 Acura MDX registered to "V. Navaratnarajah."

c.     I have regularly observed MANCHANDA driving a black 2012 Toyota Camry registered to "Deepak Manchanda."

d.     I have regularly observed CHUGH driving a white 2013 BMW registered to "Mukul Chugh."   The license plate for this vehicle is "MR CHUGH."

37.     The defendants VERMA and BALJEET have provided their telephone numbers to USPS personnel.   The telephone numbers that each provided were in regular correspondence with other coconspirators.

a.      According to records from T-Mobile US, Inc., the number provided by BALJEET, who is known to USPS personnel as "Sunny," is subscribed to by "BALJEET SINGH" and one other person. Based on my comparison of images of BALJEET to the person I have observed at the Warehouse, I know the person at the Warehouse who provided the telephone number subscribed to "Baljeet Singh" to be BALJEET.

b.      According to records from T-Mobile US, Inc., the number provided by VERMA was subscribed to "One Wireless Shop." Records from JPMorgan Chase show that the same telephone number was provided in connection with the opening of a bank account in the name of "Future Net USA Inc.," of which VERMA was listed as the President. In 2017 and 2018, this bank account received tens of thousands of dollars from the defendants CHUGH and HARPREET (both directly and through accounts in the name of a company which, based on a review of emails obtained pursuant to a judicially authorized search, HARPREET operated). Based on my comparison of images of VERMA to the person I have observed at the Warehouse, I know the person at the Warehouse to be VERMA.

## COMPANIES AT THE WAREHOUSE

38.     According to lease documentation, several companies used by the coconspirators lease office space at the Warehouse. These companies include Hosea Express, Inc. ("Hosea") and NYC International Courier, Inc. ("NYC International"). Based on the investigation to date, including but not limited to my review of law enforcement records, emails obtained pursuant to judicially authorized search warrants, discussions with USPS personnel and other non-law enforcement witnesses, and my personal observations, I

believe that Hosea and NYC International operate as front businesses primarily engaged in drug trafficking. Each entity operates out of a different room at the Warehouse; based on personal observations and surveillance of the Warehouse, it appears that the primary activity in each room is the unpacking, organization, storage, repacking, labeling, and shipping of controlled substances.

39. I have reviewed bank records associated with Hosea, some of which reflect that the defendant KAMALDOSS is the President of Hosea, some of which reflect that the defendant NAVARATNARAJAH is the President while KAMALDOSS is the Vice-President, and some of which reflect that KAMALDOSS is the sole owner. NAVARATNARAJAH has listed Hosea as his employer on at least one application to open a bank account. Records from American Express indicate that the defendant SELVAM paid numerous bills, including Federal Express bills, associated with Hosea, and SELVAM is a co-signer for a related entity, Hosea Worldwide Express Inc., which also listed KAMALDOSS and KAMALDOSS's wife as proprietors. As described infra in paragraphs 52-53, SELVAM coordinates the purchase of controlled substances, on Hosea's account, for KAMALDOSS.

40. NYC International, which is listed on bank account records, USPS records, and lease documents as the company of the defendant NARAYANASAMY has been identified as a source of supply for Tramadol throughout the United States for years. Notably, in 2015, law enforcement agents traced shipments of Tramadol received by an undercover officer and learned that the postage used to mail that Tramadol had been paid for by a commercial account linked to NARAYANASAMY, who provided his address as

"PARTHIBAN NARAYANASAMY, NYC International Courier," followed by the

Warehouse's physical address.

## COMMUNICATIONS REGARDING THE CONSPIRACY

41.     The defendants regularly communicated with each other through email,

sharing cloud-based documents and using online messaging applications such as WhatsApp.

Pursuant to search warrants for emails accounts authorized by the Honorable Ramon E.

Reyes, Jr., and for electronic devices authorized by the Honorable Sanket J. Bulsara, I have

reviewed thousands of the defendants' communications.   I have also reviewed

communications pursuant to border searches of electronic devices which the defendant

KAMALDOSS brought into the United States (the "KAMALDOSS Devices").

42.     During my review of the defendants' communications, I became aware

of the following non-exhaustive list of accounts associated with the defendants:

a.     An account used by the defendant NARAYANASAMY (the

"NARAYANASAMY Account").   This account lists the user's name as "Pat Sam," which I

understand to be short for "Parthiban Narayanasamy."   The user listed his name as "pat

sam" and gender as "Male" for Google Plus services.   Records from Google establish that

the user listed a telephone number ending in 4693 for two-factor authentication; this same

telephone number was saved in the KAMALDOSS Devices with the contact name "Pat."

b.     An account used by the defendant KAMALDOSS (the "First

KAMALDOSS Account").   KAMALDOSS has provided the First KAMALDOSS Account

in connection with visa applications obtained from the United States Department of

Homeland Security.   The user of the First KAMALDOSS Account listed the display name

"Ezhil Sezhian."

c.      Another account used by KAMALDOSS (the "Second KAMALDOSS Account").   Communications from the Second KAMALDOSS Account were stored on the KAMALDOSS Devices.   The user of the Second KAMALDOSS Account lists his display name as "Kamal Doss."

d.      Another account used by the defendant HARPREET (the "HARPREET Account").   The user of this account listed his name as "vicky singh." Records from Google indicate that the telephone number associated with the account and used for Google's two-factor authentication system is a number ending in 7000; records from T-Mobile indicate that the same number ending in 7000 is subscribed to "Harpreet Singh."

e.      An account used by the defendant SELVAM (the "SELVAM Account").   The user of the SELVAM Account lists his name as "Vetri Selvam."

f.      An account used by the defendant NAVARATNARAJAH (the "NAVARATNARAJAH Account").   The user of the NAVARATNARAJAH Account listed his name as "Rajah Rani," which I understand to be a reference to the name "Navaratnarajah."   The NAVARATNARAJAH Account received emails from E-BillExpress@e-billexpress.com, which refer to insurance policies in the name of "Navaratnarajah V." and list credit card information associated with the policy. NAVARATNARAJAH listed his email address as the NAVRATNARAJAH Account on documentation provided to banks in connection with opening bank accounts.

43.      The defendants maintained daily ledgers detailing the names, addresses, drugs, pill size, and pill amounts ordered by customers throughout the United States, and several defendants regularly shared these documents.

44. A search of the Google Drive account associated with the NARAYANASAMY Account revealed dozens of spreadsheets containing such information. The ledgers occasionally use shorthand but are frequently explicit about the drugs to which they refer. For example, one spreadsheet entitled "29 may.xlsx" and dated May 29, 2019, listed customer names and addresses and the drugs that were ordered, including "VALIUM 10 MG," "XANAX 1 MG" and "T100," the last of which I understand to be a reference to Tramadol 100 MG. The NARAYANASAMY Account also includes similar spreadsheets for nearly all of the business days in May 2019.

45. On or about July 24, 2018, the HARPREET Account emailed the Second KAMALDOSS Account and attached a document entitled "KAMAAL ACCOUNT – Copy.xlsx." The attachment was an Excel spreadsheet containing a "Statement of Account" for "Kamal," which I understand to be a reference to the defendant KAMALDOSS. The spreadsheet contained columns for "date," "particulars," "qty," "rate," "debit," "credit" and "balance," among others. For example, it listed a transaction on June 26, 2018, listed as "T-100," with a quantity of 2490 and a rate of 1.5, which led to a debit of 3,735.00. Based on my understanding of the scheme, this row reflected KAMALDOSS's purchase of 2,490 pills of Tramadol 100 mg, for a price of $3,735. The spreadsheet also reflected KAMALDOSS's payments—for example, on July 4, 2018, it lists "Paid in NYC office," and applies a credit of 5,000, which I understand to be a reference to a cash payment by KAMALDOSS to the defendant HARPREET of $5,000 made in the Warehouse.

46. On or about February 14, 2019, a coconspirator emailed the Second KAMALDOSS Account and attached an Excel spreadsheet entitled "Kamaal Statement.xlsx" (the "February 14 Spreadsheet"). The February 14 Spreadsheet—which appeared to be an

update version of the spreadsheet sent by the HARPREET Account and described in paragraph 45 supra—contained five tabs titled "Kamal," and "Statement of Account" for different periods between July 2018 and January 2019.   In each of those tab there were debits and credits listed; the debits reflected drugs purchased (apparently by the defendant KAMALDOSS) quantities and rates—for example, in August 2018, KAMALDOSS purchased approximately 48,000 Tramadol 100mg pills (reflected in the spreadsheet as "T-100" and "100"), at a rate of 1.50 per pill, which I understand to mean $1.50.   The February 14 Spreadsheet also reflected substantial payments—for example, in August, it reflects $25,000 paid over two days listed as "Paid in nyc Office," which I understand to be a reference to the Warehouse, as another $30,000 that was listed as "AMOUNT TRANSFER [sic] FROM FEDEX A/C."   A sixth tab on the spreadsheet was titled "FEDEX" and listed invoices, debits, credits, and a balance; the final entry on that tab was an October 30, 2018 transaction listed as "AMOUNT TRANSFER TO MAIN A/C," listed as a debit of $55,169.75.   A corresponding entry on the tab including that date lists an October 30, 2018 credit of $55,169.75.   Based on my investigation to date, I understand this spreadsheet to be a running tabulation of the sale of controlled substances from HARPREET and others (representing one component of the co-op model conspiracy) to KAMALDOSS, SELVAM, NAVARATNARAJAH and others (representing another component).

47.      On or about March 14, 2019, the NAVARATNARAJAH Account emailed the Second KAMALDOSS Account a photograph of a receipt from the USPS listing cities, addresses, and tracking numbers, and reflecting a total outlay of $311.30 associated with the mailing of the envelopes.   Also on or around March 14, 2019, the user of the Second KAMALDOSS Account emailed a co-conspirator a document entitled "13 Mar us to

us.xlsx," which included customers' names and addresses and tracking numbers which matched the tracking numbers and zip codes on the picture of the receipt emailed by the NAVARATNARAJAH Account, as well as the drugs that they ordered, including "Tramadol 200mg," "Tramadol 225mg," "Soma 500mg," and others, and including the pill quantities that were shipped.

48.     On or about May 10, 2019, the NARAYANASAMY Account shared, through a link in an email, a spreadsheet listing approximately 40 customers, their addresses, and the drugs that they ordered, including "Tramadol 100mg," "VALIUM 10 MG," "XANAX 2 MG" and others, and the number of pills sent to each customer, with the First KAMALDOSS Account.   The spreadsheet also included USPS tracking numbers associated with each mailing.

### The Money Laundering Conspiracy and Payments for Narcotics

49.     Customers who purchased Tramadol and other drugs from the coconspirators, including the UC, paid using money remitters such as Western Union and MoneyGram, as well as PayPal, sending money to recipients located in India.   Based on my familiarity with the scheme and my discussions with participants in similar schemes, I understand that the recipients of customers' payments were likely "money mules," or individuals paid to assume the risk attendant to receiving money sent in direct exchange for illicit controlled substances.   Money mules typically provide cash to members of the conspiracy in India who deal directly with the U.S.-based customers (the "Salesmen").

50.     The Salesmen emailed lists of orders from their U.S.-based customers to the defendant KAMALDOSS, in spreadsheets containing the customers' names, addresses, drug orders, and quantities.   KAMALDOSS responded by sending the Salesmen

the same spreadsheet with the previously empty column—frequently entitled "Tracking" or something analogous—populated with the confirmation numbers of the USPS envelopes that were shipped, typically from the Warehouse.

51.     The Salesmen would then transfer money into Indian bank accounts in the name of the defendant KAMALDOSS (the "Indian KAMALDOSS Accounts"), corresponding to the number of pills of each type shipped and the price of each pill.

52.     The defendant KAMALDOSS regularly transferred money from the Indian KAMALDOSS Accounts into at least one U.S. bank account in the name of the defendant SELVAM (the "SELVAM U.S. Account"). SELVAM used the money that KAMALDOSS transferred into the SELVAM U.S. Account to pay down the balance on an American Express account held jointly by KAMALDOSS and SELVAM (the "AmEx Account").

        a.      For example, on or about November 26, 2018, KAMALDOSS wired $60,000 from the Indian KAMALDOSS Accounts to the SELVAM U.S. Account. On or about November 28, 2018, SELVAM paid $45,000 from the SELVAM U.S. Account towards the AmEx Account.[9] On or about the same day, the SELVAM U.S. Account emailed the First and Second KAMALDOSS Accounts a confirmation of the $45,000 payment to the AmEx Account.

        b.      Similarly, on or about February 13, 2019, KAMALDOSS wired $30,000 from the Indian KAMALDOSS Accounts to the SELVAM U.S. Account. On or about the same date, SELVAM made a $31,725.27 payment to the AmEx Account.

_____

        [9] Based on bank account records in KAMALDOSS's emails, it appears that on or about November 15, 2018, SELVAM made a $15,000 payment to the AmEx Account.

c.      On or about February 15, 2019, KAMALDOSS wired $25,000 from the Indian KAMALDOSS Accounts to the SELVAM U.S. Account. On or about the same date, SELVAM made a $23,851.29 payment from the SELVAM U.S. Account to the AmEx Account.

53.      The American Express account was regularly used to pay Federal Express bills in the name of Hosea. Payments to a Federal Express account were listed as "credits" in the February 14 Spreadsheet, reflecting that these payments were in fact used to pay for the purchase of additional Tramadol pills. Documents that I reviewed from the KAMALDOSS Devices confirm that the invoice numbers and payment amounts associated with the Federal Express bills paid by the AmEx Account were the same Federal Express payments that were listed as credits on the February 14 Spreadsheet.

a.      For example, an American Express bill that was located on the KAMALDOSS Devices indicates that on or about September 24, 2018, the AmEx Account paid $8,324.34 to Federal Express, in relation to invoice number 394734111. An identical payment to the same invoice number is reflected as a September 25, 2018 credit on the February 14 Spreadsheet.

b.      Similarly, on or about October 1, 2018, the AmEx Account paid $11,252.53 to Federal Express, in relation to invoice number 450516942. An identical payment to the same invoice number is reflected as an October 2, 2018 credit on the February 14 Spreadsheet.

54.      Based on my review of emails between the SELVAM Account and the First KAMALDOSS Account, SELVAM typically emails KAMALDOSS after paying the American Express bills used to pay for the Tramadol.

WHEREFORE, your deponent respectfully requests that the court issue arrest warrants so that the defendants EZHIL SEZHIAN KAMALDOSS, also known as "Kamaldoss Sezhian," "Kamal Doss" and "Ezhil Cezhian," HARPREET SINGH, also known as "Vicky Singh," PARTHIBIAN NARAYANASAMY, also known as "Pat," VELAUDAPILLAI NAVARATNARAJAH, also known as "Rajah," "Rajah Rani" and "Valaudapillai Navaratnarajah," BALJEET SINGH, also known as "Sunny," DEEPAK MANCHANDA, GULAB GULAB, MUKUL CHUGH, VIKAS M. VERMA, and KAMALADOSS VETRI SELVAM, also known as "Vetri Selvam" and "Kamala Doss Selvam," be dealt with according to law.

PATRICK CONNOR
Special Agent
United States Food and Drug Administration

Sworn to before me this
_____ day of September, 2019

S/ Mann

THE HONORAL
UNITED STATE
EASTERN DIST